\*\*\* FILED UNDER SEAL PURSUANT TO COURT ORDER \*\*\*

UNTED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IRIS CONNEX, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:15-cv-1915-JRG |
| v. | § | |
| | § | CONSOLIDATED LEAD CASE |
| DELL, INC., *et al*. | § | |
| | § | |
| Defendants. | § | |

## CRAIG TADLOCK'S RESPONSE TO THE SANCTIONS MOTION OF DEFENDANT DELL, INC., AND TO THE COURT'S SHOW CAUSE ORDER

CRAIG TADLOCK, former counsel to Plaintiff, Iris Connex, LLC, files Response to the Sanctions Motion of Defendant, Dell, Inc., and Response to the Court's Show Cause Order, and would show the court the following:

### I. INTRODUCTION

This pleading ("Response") is being filed in Response to Dell's Motion to Find the Case Exceptional and Award Fees, (Dkt. No. 25) and the Court's December 6, 2016, Show Cause Order (Dkt. No. 74).

This Response is filed on behalf of Craig Tadlock and the Tadlock Law Firm, PLLC (hereinafter "Tadlock" collectively). This Response is supported by the Declaration of Craig Tadlock, filed contemporaneously with this Response.

### II. SUMMARY OF THE ARGUMENT

A. Tadlock has been completely accurate in representing the nature of its engagement letter with his client, Iris Connex, LLC in Tadlock's Motion to Withdraw (Dkt. No. 43) and Motion to Stay (Dkt. No. 38).

B. Tadlock has been forthright with the court regarding Iris Connex's Corporate Rule 7.1

Disclosure Statements.

C.      Iris Connex, LLC, is a proper resident of the Eastern District of Texas.

D.      Tadlock's pre-suit investigation and claim construction was consistent with highest standards of the profession.

E.      Iris Connex has conducted this litigation in a proper and legitimate manner.

F.      There is nothing exceptional about this case and Dell's motion should be denied.

## III. ARGUMENTS AND AUTHORITIES

**A.      Tadlock and the Representation of Iris Connex.**

Tadlock has been completely accurate in representing the nature of its engagement letter with his client, Iris Connex, LLC, in Tadlock's Motion to Withdraw (Dkt. No. 43) and Motion to Stay (Dkt. No. 38).

Tadlock says in his Motion to Withdraw (Dkt. No. 43) that he was only engaged to represent Iris Connex in the "enforcement and licensing of its intellectual properties." (Dkt. 43, ¶2). This language does not include the defense of a fee-shifting motion as filed by Defendant, Dell. This matter is set out in ¶¶ 87-91 of Tadlock's Declaration. The engagement letter itself is attached to the Declaration as Exhibit O. The engagement letter speaks for itself: Paragraph 2 states "It should be understood that the [Tadlock] Firm has agreed to a limited representation of Client's [Iris Connex's] interests. *The scope of the Firm's representation of Client is limited to the enforcement and licensing of Client's Intellectual Properties.* (emphasis added).

Despite this clear and direct language, Dell has attempted to contest this conclusion. Dell has deliberately attempted to mislead this court by instead referring to some irrelevant language in Paragraph 4, which refers to "Attorney's Fees and Litigation Costs" as showing that Tadlock had a contingent fee in defending a Rule 11 motion. To support this argument, Dell quotes

language from Tadlock's deposition that is taken out of context and is incomplete. See Dell's Supplemental Brief (Dkt. 97, pp. 5-6). But Dell attaches the entirety of Tadlock's deposition (Dkt. 97, Ex. 8) so the whole testimony can be reviewed. Tadlock directs the court's attention to page 13, line 5 through page 30, line 13. Tadlock Declaration, ¶ 91.

One may legitimately ask what Dell's justiciable interest might be in the scope of representation of Tadlock? Of what concern is it to Dell who represents Iris Connex? The plain answer is none. This is, instead, part of Dell's strategy of aggressive harassment of lawyers and companies who have the unmitigated nerve to sue them. Tadlock relates his prior experiences with Dell at ¶¶ 32-34, which have involved attempts by the same counsel for Dell to disqualify Tadlock (unsuccessfully) or intimidate Tadlock (also unsuccessfully).

In short, Tadlock has been clear and direct with this court.

**B.**      **Iris Connex's Corporate Rule 7.1 Disclosure Statements.**

Tadlock has been forthright with the court regarding Iris Connex's Corporate Rule 7.1 Disclosure Statements.

This issue is discussed at length in Tadlock's Declaration, ¶¶ 45-50. In these paragraphs he makes clear his understanding was, at the inception of this suit, that Iris Connex was owned directly by Mr. Yates. In October 2016 Tadlock learned that actual arrangement was that Yates owned a company called Q Patents and it, in turn, owned the membership interest in Iris Connex. At once a supplemental disclosure was filed with the court, correcting this error.

Dell, again, with no justiciable interest, complains that Tadlock was intentionally deceiving the court. Tadlock explained these facts in his deposition at pp. 74-75 (Ex. 8 to Dell's Supplemental Brief, Dkt. 97.) Despite this lack of evidence, lack of prejudice, or lack of justiciable interest, Dell insists on making this incorrect argument.

C.  **Iris Connex, LLC, is a Proper Resident of the Eastern District of Texas.**

Dell initially argued that Iris Connex did not have an office in the Eastern District and was therefore not a proper plaintiff. In support of this argument, Dell submitted a photograph of the building directory where Iris Connex claimed to office. This was included in this court's order of October 7, 2016, (Dkt. 36).

Dell then discovered that its investigation was incorrect and, in its Supplemental Brief, (Dkt. 97), shifts its position and argues that Iris Connex's office is a *sham*. They claim that Iris Connex does not have a sign on the door, a telephone number, any working capital and an assortment of other irrelevant arguments. Had Dell examined Texas law, they would have learned that Iris Connex has all that is legally required: a registered office, TEX. BUS. ORG. CODE §3.005(a)(5) and, in the case of an LLC, the address of the manager (or member), § 3.010.

In fact, Iris Connex's manager's address, Mr. Labbit's, is exactly the address Dell claimed did not exist: 211 E. Tyler St., Suite 600-A, Longview, Texas. See Exhibit C to Tadlock's Declaration. Its "registered office" is listed in Plano, Texas (also in the Eastern District), where the vendor that assisted Iris Connex with its incorporation is located.

In addition to Dell's shoddy investigation which could not find Suite 600-A at 211 Tyler St., Longview, Dell 1) could have gone to the Secretary of State, obtained the same document that is Exhibit C to Tadlock's Declaration; 2) could have gone to the State Bar of Texas and looked at Mr. Labbit's profile (Exhibit D to Tadlock's Declaration), showing that same address as his official address for the State Bar; or 3) could have gone to the Landlord at 211 Tyler and discovered that there is a lease for both Mr. Labbit and Iris Connex (Exhibit E and F to Tadlock's Declaration). Dell did none of these things. Nor did it study its own photograph

which shows Suites 600 D, E, G, and J. That listing implies there are Suites 600 A, B, C, F, H, and I but Dell did not exercise the diligence to find out. This issue is further addressed in Tadlock's Declaration, §§ 35-44.

It is instructive that in analogous litigation with another of Mr. Yates's entities, challenges to that entity's residence were similarly defeated. See, *Presqriber, LLC v. CureMD.com, Inc.,* referenced in § 95(e) of Tadlock's Declaration, Exhibit V.

In sum, Iris Connex had met the legal requirements of Texas law to office in the Eastern District and Dell's contrary assertion is at least careless, if not negligent.

D.  **Tadlock's Pre-Suit Investigation and Claim Construction Was Consistent With the Highest Standards of the Profession.**

    1.  **Pre-suit investigation.**

In Tadlock's Declaration, ¶¶ 19-31, there is a lengthy discussion of Tadlock's pre-suit investigation. Without rehashing the many pages of the Declaration's description, the investigation can be summarized as follows:

- Tadlock reviewed U.S. Patent No. 6,177,950 (the "'950 Patent") and its file history in its entirety.
- Tadlock reviewed the accused products.
- Tadlock analyzed infringement with respect to the accused products and the Claims of the '950 Patent.
- Tadlock, through Mr. Yates, had contact with the inventor of the '950 Patent and his favorable position on the infringement claims of Iris Connex.
- Tadlock and Labbit prepared claim charts.
- Tadlock performed validity analysis, particularly as it related to the *Alice* opinion and the prior art reflected in the file history.

- Tadlock reviewed a list of potential defendants and edited downward from 30 to 18, due to a variety of reasons such as small market presence.

- Tadlock verified the legal status of Iris Connex to verify it was in good standing.

- Tadlock visited Defendant's websites to verify the accused products were being sold in the Eastern District

- Tadlock reviewed the patent citations of the '950 Patent and discovered it had been extensively forward-cited.

Tadlock relied on his extensive experience in patent litigation. His investigation lasted from September 29, 2015, through November 30, 2015, the date of filing of the complaint. He was fully prepared to litigate the claims. Tadlock's Declaration at ¶¶ 28-30.

Most telling to any attorney is that he was willing to invest his time and resources in pursuing the claim on a contingency fee basis. Tadlock's Declaration at ¶ 31.

### 2. **Claim Construction and Infringement.**

Tadlock in his Declaration discusses Claim Construction at pp. 16-21, ¶¶ 51-59. The Claim Construction analysis is very complete, and consistent with the ´950 Patent. Importantly, Tadlock's analysis incorporates the expert opinion of Nigel Jones, a legitimate and well-qualified expert. In particular, Mr. Jones' opinion not only supported Iris Connex's position on the Doctrine of Equivalents, it supported its claim construction position more generally and that there was no prosecution history estoppel.

Dell's position is simple. It can point to no failure on the part of Iris Connex or Tadlock to properly investigate in pre-suit matters or claim construction except one: Iris Connex failed to agree with Dell. It comes down to "we were right and you were wrong so obviously your pre-suit investigation and claim construction were defective." In essence, Dell is arguing the

defective argument that "losers should pay", which will be further discussed, *infra.*

E.     **Iris Connex Has Conducted This Litigation in a Proper and Legitimate Manner.**

The Tadlock Declaration explains the conduct of this litigation in pp. 21-29, ¶¶ 60-81. In these pages, in exhaustive detail, Tadlock explains Iris Connex's attempts to settle with RPX and Dell, and the reasonable efforts to make these settlements operate. There is no evidence that Iris Connex was simply looking for small dollar "nuisance settlements." Indeed, at all times it was apparent that Iris Connex and Tadlock were ready, willing, and able, to litigate these claims on the merits. Further, there is nothing in the record that Iris Connex took any action to needlessly or unnecessarily increase the costs of this litigation to any party. In fact, as patent cases go, this case was relatively short lived.

F.     **There is Nothing Exceptional About This Case and Dell's Motion Should Be Denied.**

There is now a substantial body of opinions from this court (and its magistrate) ruling on defendants' claim that a case is exceptional. This law has been discussed many times by this court. As best counsel can determine, this court has granted one motion to find a case exceptional (*eDekka v. 3Balls.com*, Cause No. 2:15-CV-541) and denied many other such motions. That is as the law should be. As has been reported, 33% of the IP cases filed in the United States are filed in this court. Just as a matter of statistics, if there were a large number of exceptional cases, they would be found in this court. But this court has adhered to the true definition of "exceptional."

A short review of representative cases decided by this court shows this case is far removed from *eDekka* while indistinguishable from cases this court has not found exceptional.

In the *eDekka* case the court found that the Patent in question was "directed to unpatentable subject matter" under the Supreme Court's *Alice* opinion. The court went on to

find that eDekka's case was objectively unreasonable and that eDekka litigated in an unreasonable manner. The court concluded: "the ´674 Patent claims were clearly directed toward unpatentable subject matter, and no reasonable litigant could have reasonably expected success on the merits when defending against the numerous §101 motions filed in this case." *eDekka, supra;* Opinion at p. 5. Clearly the facts of this case are not comparable in any way to the case at bar.

By contrast, this court has denied "exceptional" status, to a request by a defendant claiming similar facts to *eDekka* in its recent opinion in *NexusCard, Inc. v. Brookshire Grocery Company,* 2:15-cv-961-JRG (November 23, 2016). This court found that despite a lack of patentability, the claims were fundamentally different from the "manifestly abstract claim at issue in *eDekka*." Opinion at p. 5.

In *Gonzalez v. Infostream Group, Inc.*, Cause No. 2:14-cv-906, (October 4, 2016) a motion by Defendant New Life Ventures, Inc., to find the case exceptional was denied. NLV argued the patent was invalid and that Plaintiff had pursued a "sue and settle" strategy. This court found both arguments unpersuasive, noting that the patent had withstood various challenges and that Plaintiff was obviously ready to litigate as needed, undermining the "sue and settle" theory.

In *Mears Technology, Inc. v. Finisar Corporation*, Cause No. 2:13-cv-376 JRG (December 21, 2015) this court denied a motion for attorney's fees based on a finding the case was exceptional. The Opinion states "[t]his Court finds that Mears's litigation strategy in this case falls within the spectrum of a streamlined prosecution of litigation and, though unsuccessful does not rise to exceptional behavior." Opinion at p. 7.

In *Interform Inc. v. Staples, Inc.*, Cause No. 2:13-cv-281 JRG, this court denied

Defendants' motion to determine the case exceptional. This court noted that in the 18 months this case was litigated it observed nothing exceptional in how the case was litigated. This case also involved some raw testing data which was destroyed by Plaintiff's expert. While noting it probably should be preserved, the record was unclear of its prejudicial effects, and held that was not a basis of making an otherwise unexceptional case into an exceptional one. Opinion at p. 5.

There are numerous other cases which could be cited, but the point is the case at bar had a much stronger infringement case than any of the cases cited. In particular, its pre-suit investigation was more thorough, its claim construction and infringement positions were stronger and supported by a well-qualified expert, and Plaintiff was always willing and able to pursue a trial on the merits.

## IV. CONCLUSION

Of the hundreds of IP cases on this court's docket, there is absolutely nothing to distinguish this from any other. It is not exceptional by any standard. As this court wrote in the *eDekka* Opinion "[t]his Court does not view every plaintiff's loss as an automatic indicator that the case is exceptional." Opinion at p. 8.

This motion by Dell is part of their overall litigation tactics to bully and harass attorneys and parties that have the temerity to sue Dell. This tactic should not be allowed to succeed.

## PRAYER

Craig Tadlock prays that Dell's Motion to Find the Case Exceptional and Award Fees (Dkt. 25) be denied in its entirety and that the Court find that Tadlock should not be sanctioned for filing this lawsuit (*see* Dkt. 74).

**\*\*\* FILED UNDER SEAL PURSUANT TO COURT ORDER \*\*\***

                                        BLUME, FAULKNER & SKEEN, PLLC

                                        /s/ James D. Blume

                                        _____
                                        James D. Blume (jblume@bfslawgroup.com)
                                        State Bar No. 02514600
                                        111 W. Spring Valley Road
                                        Suite 250
                                        Richardson, Texas  75081
                                        (214) 373-7788
                                        (214) 373-7783 – Fax
                                        *Attorneys for Third Party Plaintiff Charles Craig*
                                        *Tadlock and Tadlock Law Firm, PLLC*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that a copy of the foregoing was served on all parties who have appeared in this case on January 4, 2017, via the Court's CM/EMF system, pursuant to Local Rule CV-5(a)(3).

                                          /s/ James D. Blume
                                          James D. Blume

**CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL**

      I hereby certify that under Local Rule CV-5(a)(7)(A) that the corresponding documents were filed under seal pursuant to the Court's Protective Order (Dkt. 114) and the Court's Sealed Order dated January 4, 2017, (Dkt. 74).

                                          /s/ James D. Blume
                                          James D. Blume